**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **JANE ROE, individually and on behalf of all others similarly situated**, <br><br> Plaintiff, <br><br> v. <br><br> **INTELLICORP RECORDS, INC.** <br><br> Defendants. | CASE NO. 1:12-cv-02288 <br><br><br> UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| **MICHAEL R. THOMAS and MARK A. JOHNSON, on Behalf of themselves and all others similarly situated,** <br><br> Plaintiffs, <br><br> v. <br><br> **INTELLICORP RECORDS, INC.,** <br><br> Defendant. | CASE NO. 1:12-CV-02433 <br><br><br> UNITED STATES DISTRICT JUDGE JAMES S. GWIN |
| **MARK A. JOHNSON, individually and on behalf of all others similarly situated**, <br><br> Plaintiff, <br> v. <br><br> **INSURANCE INFORMATION EXCHANGE, LLC**, <br><br> Defendant. | CASE NO. 1:13-CV-00616 <br><br> UNITED STATES DISTRICT JUDGE JAMES S. GWIN |

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS SETTLEMENT, CERTIFICATION OF A CLASS FOR THE PURPOSES OF SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE**

Now come the Plaintiffs, by and through counsel, and with the consent of the Defendants hereby move the Court pursuant to Federal Rule of Civil Procedure 23 for preliminary approval of the class settlement, certification of a class for the purposes of settlement, and approval of form and manner of notice.  The Plaintiffs, with the consent of the Defendants, seek an Order:

(1)     Consolidating the three actions into a single action *Roe, et al. v. Intellicorp Records, Inc., et al.*, Civ. No. 1:12CV2288-JG (N.D. Ohio);

(2)     Conditionally certifying a Settlement Class comprised of the Settlement Class Members;

(3)     Preliminarily approving the Settlement Agreement and Release;

(4)     Approving the proposed Notices of Class Action Settlement;

(5)     Certifying the named Plaintiffs Jane Roe, Michael Thomas and Mark Johnson as Class Representatives;

(6)     Appointing Plaintiffs' counsel as Class Counsel; and

(7)     Appointing a Settlement Administrator;

A memorandum in support is attached hereto and incorporated herein.

Respectfully Submitted,

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Ian B. Lyngklip (P47173)
24500 Northwestern Highway,
Suite 206
Southfield, Michigan 48075
Phone: (248) 208-8864
Ian@michiganconsumerlaw.net

THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok
(*admitted pro vice*)
P.O. Box 7165
Alhambra, CA 91802-7165
Phone: (310) 430-9933
Fax: (323) 563-3445

 /s/ Matthew A. Dooley
Matthew A. Dooley
Anthony R. Pecora
O'TOOLE, MCLAUGHLIN, DOOLEY &
PECORA, CO LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel: (440) 930-4001
Fax: (440) 934-7208
mdooley@omdplaw.com
apecora@omdplaw.com

CHAVEZ & GERTLER LLP
Mark A. Chavez

devin@devinfoklaw.com

A NEW WAY OF LIFE REENTRY
PROJECT
Joshua E. Kim
(*admitted pro vice*)
958 E. 108th St.
Los Angeles, CA 90059
Phone: (323) 563-3575
Fax: (323) 563-3445
joshua@anewwayoflife.org

COHEN, ROSENTHAL & KRAMER LLP
Jason R. Bristol (0072989)
The Hoyt Block Bldg.
700 St. Clair Avenue, W
Suite 400
Cleveland, OH 44113
Phone: (216) 781-7956
Fax: (216) 781-8061

Jonathan E. Gertler
Nance F. Becker
F. Paul Bland
Christian Schreiber
(*all admitted pro hac vice*)
42 Miller Ave.
Mill Valley, CA 94941
Phone: (415) 381-5599
Fax: (415) 381-5572
christian@chavezgertler.com
nance@chavezgertler.com

CONSUMER LITIGATION ASSOCIATES
Leonard A. Bennett (VSB#37523)
Matthew Erausquin
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
lenbennett@clalegal.com
matt@clalegal.com

*Counsel for Plaintiffs Jane Roe,*
*Michael R. Thomas, Mark A. Johnson*
*the Putative Class*

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................... 1

II.   THE LITIGATION TO BE CONSOLIDATED.......................................... 2

   A.    *Roe v. Intellicorp Records, Inc., Case No. 1:12-CV-02288* ........................ 2

   B.    *Thomas v. Intellicorp Records, Inc., Case No. 1:12-CV-02443*.................... 2

   C.    *Johnson v. Insurance Information Exchange, LLC, Case No. 2:12-CV-1118* ............... 3

III.  THE PLAINTIFFS' CLAIMS ...................................................................... 3

IV.   THE LITIGATION AND THE JOINT SETTLEMENT OF THE RESPECTIVE
ACTIONS ............................................................................................................ 4

V.    THE PROPOSED SETTLEMENT ............................................................. 5

VI.   THE SETTLEMENT CLASS SHOULD BE CERTIFIED......................... 8

   A.    *Numerosity* ..................................................................................... 10

   B.    *Common Questions of Law or Fact* ............................................... 10

   C.    *Typical Claims*................................................................................ 11

   D.    *Adequate Representation*................................................................ 13

   E.    *Rule 23(b)(3) Factors*..................................................................... 15

      1.    Predominance ............................................................................. 15

      2.    Superiority .................................................................................. 16

VII.  THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............. 17

VIII. CONCLUSION .......................................................................................... 20

i

# TABLE OF AUTHORITIES

**Cases**

*Alkire v. Irving*, 330 F.3d 802, 821 (6th Cir. 2003) ..................................................... 11

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) ..................................................... 9, 15, 17

*Anderson v. Aetna Cas. & Sur. Co.*, 493 U.S. 959 (1989) ........................................... 10

*Beattie v. CenturyTel, Inc.*, 511 F.3d 554 (6th Cir. 2007) ................................... 12, 13, 16

*Daffin v. Ford Motor Co.*, 458 F.3d 549 (6th Cir. 2006)................................................. 10, 11, 16

*Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974)........................................................... 9

*Falcon*, 457 U.S. at 160 ................................................................................................ 10

*Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161 (1982) ........................................................ 9

*Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1305-06 (M.D. Ala. 2009) ............................ 19

*Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997).................................. 16

*In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989)..................................................... 10

*In re American Medical Systems, Inc.*, 75 F.3d 1069 (6th Cir.1996) .................... 9, 10, 11, 12, 13

*In re AOL Time Warner, Inc. Sec. Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 17588, at *6

    (S.D.N.Y. Apr. 6, 2006)................................................................................ 18

*In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, at *4 (S.D.N.Y. 2011)................. 18

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001) ............................ 18

*In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 535 (6th Cir. 2008) ................................. 15

*In re Sturm*, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) ...................................... 18

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 851 (6th Cir.

    2013) ................................................................................................ 9, 10

*International Union, United Auto., Aerospace, and Agr. Implement Workers of America v.*

    *General*, 497 F.3d 615, 625-626 (6th Cir. 2007) ........................................................ 13

*James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001) ............................................... 12

*Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 332-333 (W.D. Mich. 2000) ............. 16

*Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997) ...................................... 17

*Olden v. Gardner*, 294 Fed.Appx. 210, 217 (6th Cir. 2008) ........................................ 9, 17

*Olden v. LaFarge Corp.*, 383 F.3d 495, 507-508 (6th Cir. 2004) ...................................... 15

*Pfaff v. Whole Foods Mkt. Group, Inc.,* 2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sept. 29,

    2010) .............................................................................................................. 16

*Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592 (6th Cir. 2007)................. 12

*Romstadt v. Apple Comp., Inc.*, 948 F. Supp. 701 (N.D. Ohio 1996)................................. 18

*Senter, supra*, 532 F.2d at 525 ..................................................................................... 13

*Sprague v. General Motors Corporation*, 133 F.3d 388, 397 (6th Cir. 1998)........................ 11

*Sterling v Velsicol Chemical Corporation*, 855 F.2d 1188, 1196 (6th Cir. 1988)................... 10

*Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)................................................ 13

*Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 302-304 (3d. Cir. 2011) ............................ 9

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) .......................................... 9, 10

*Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 268 (5th Cir. 2000).......................... 19

## Statutes

§ 1681e(b) ..................................................................................................................... 4

§ 1681e(b). .................................................................................................................... 2

§ 1681k.......................................................................................................................... 2

15 U.S.C. § 1681e(b) ....................................................................................................... 3

15 U.S.C. § 1681g(a) ............................................................................................ 7

15 U.S.C. § 1681k ............................................................................................... 3

15 U.S.C. § 1681k(a)(1) ................................................................................... 4, 6

15 U.S.C. § 1681n ........................................................................................... 4, 19

15 U.S.C. §1681e(b), ........................................................................................... 4

15 U.S.C. §1681k(a) ............................................................................................ 3

15 U.S.C. §1681k(a)(1) ....................................................................................... 4

## Other Authorities

1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, §§ 3.10, at 3-50 ............. 11

2 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.25 ................................ 18

MANUAL FOR COMPLEX LITIGATION SECOND, §30.44 (2d ed. 1985) ........................................... 18

MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995) ....................................................... 18

NEWBERG ON CLASS ACTIONS, *supra,* § 3.13 at pp. 3-76ff ............................................................. 12

## Rules

15 U.S.C. § 1681 *et seq.* .................................................................................... 1

15 U.S.C. § 1681n .............................................................................................. 16

Fed. R. Civ. P. 23 ........................................................... 8, 9, 10, 14, 15, 20

Fed. R. Civ. P. 23(e) ......................................................................................... 17

Fed. R. Civ. P. 23(e)(2) ....................................................................................... 9

Fed. R. Civ. P. 23(a)(2) .............................................................................. 8, 9, 11

Fed. R. Civ. P. 23(a) .................................................................................... 13, 20

Fed. R. Civ. P. (a)(1) ......................................................................................... 10

Fed. R. Civ. P. 23(b) ........................................................................................... 8

iv

Fed. R. Civ. P. 23(b)(3) ............................................................................... 9, 10, 15, 16, 20

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................................. 20

Fed. R. Civ. P. 23(e)(1) ....................................................................................................... 20

**Regulations**

California Penal Code § 1203.4 .............................................................................................. 2

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Defendant Intellicorp Records, Inc. ("Intellicorp") is a nationwide provider of consumer reports, including criminal background checks.  One of the company's most popular products is an "instant" background report, "Criminal SuperSearch" ("CSS") that enables a prospective employer to log onto Intellicorp's website and review, within seconds, information from an applicant's criminal record (if any).  Intellicorp markets CSS reports as "FCRA Compliant," and contends that CSS complies with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

The Plaintiffs in these coordinated cases have alleged that Defendants have violated the FCRA by failing to 1) provide certain consumers with copies of their consumer reports prior to delivering reports to their prospective employers, and 2) follow reasonable procedures to ensure the maximum possible accuracy of those reports.  Defendants deny these allegations, and maintain that they complied with the FCRA at all times.  After more than a year of litigation of these coordinated cases, motion practice, a class certification motion that was briefed and argued, three days of mediation and extended settlement negotiations under the supervision of a mediator, the parties have come to a resolution of this case.  A discussion of the litigation and the reasons for approval of the settlement follows.

1

## II.    THE LITIGATION TO BE CONSOLIDATED

### A.    *Roe v. Intellicorp Records, Inc., Case No. 1:12-CV-02288*

Jane Roe filed her case under a pseudonym.  As alleged, she is a professional social worker with a Masters of Social Work degree.  Years ago she was convicted of retail store theft on two separate occasions.

Intellicorp furnished background reports to two prospective employers, each of whom sought to hire Ms. Roe.  Ms. Roe alleges that both of the reports issued by Intellicorp were inaccurate.  Ms. Roe alleges that the first of these reports omitted material information about the reported charges, such as stating that the disposition date and description (among other items of information) were "Not Provided."  Ms. Roe alleges that, in the context of Intellicorp's reports, the term "Not Provided" meant that the information was not available in Intellicorp's database, and that Intellicorp's records were not up-to-date because additional information was available in public records.  Intellicorp issued the second report after Ms. Roe's conviction was dismissed pursuant to California Penal Code § 1203.4, California's "expungement" statute.  Ms. Roe alleges that the second Intellicorp report failed to note the expungement and continued to disclose the charges in alleged violation of the FCRA.

Ms. Roe filed her action on April 16, 2012 in California Superior Court.  Defendant removed the matter to federal court on May 18, 2012, and the matter was transferred to this Court on September 11, 2012.  Ms. Roe's complaint alleged violations of § 1681k as well as § 1681e(b).

### B.    *Thomas v. Intellicorp Records, Inc., Case No. 1:12-CV-02443*

As alleged in his complaint, Mr. Thomas sought employment with Best Care Senior Services, a staffing agency, in August of 2012.  Mr. Thomas consented to allow Best Care to

review a background check concerning Mr. Thomas as part of his eligibility for employment. Mr. Thomas alleges that even though he has no prior criminal history, Intellicorp prepared and furnished a consumer report containing several reports of criminal arrests and convictions, and that, in reality, that information did not relate to Mr. Thomas, but instead was properly attributed to other individuals who are not Mr. Thomas.

Mr. Thomas further alleges that this common form of credit reporting problem – known in the industry as a "mixed file" or "mismerge" – resulted in a report in violation of 15 U.S.C. § 1681e(b), which falsely described Mr. Thomas as a criminal, thus disqualifying him from employment.  Mr. Thomas also alleges that Intellicorp did not provide a copy of this report to Mr. Thomas or otherwise notify him that it intended to issue a report containing public record information before it provided the inaccurate report to Best Care Senior Services, in violation of 15 U.S.C. § 1681k.  Mr. Thomas filed his case against Intellicorp on September 28, 2012.

**C.**     *Johnson v. Insurance Information Exchange, LLC, Case No. 2:12-CV-1118*

Mr. Johnson's complaint also alleges a "mixed file" violation, in which Intellicorp's affiliate Insurance Information Exchange ("IIX"), provided Mr. Johnson's prospective employer with a criminal background report that included criminal history relating to another individual. Specifically, Mr. Johnson alleges that IIX reported that he had been convicted of "indecent assault and battery on child under 14 years of age" and "sexual abuse in the first degree," and failed to provide notice that it had done so.  Mr. Johnson alleged violations of 15 U.S.C. §1681k(a).  Mr. Johnson added his claims to those of Mr. Thomas by way of an amended complaint filed on January 7, 2013.

## III.     THE PLAINTIFFS' CLAIMS

The FCRA is a consumer protection statute that requires CRAs to "adopt reasonable procedures for meeting the needs of commerce for consumer … information in a manner which

is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information…." 15 U.S.C. §1681(b). Each of the Plaintiffs allege that Intellicorp violated the FCRA in two ways. First, Plaintiffs allege that Defendants violated 15 U.S.C. §1681e(b), the core "accuracy" provision of the FCRA. The § 1681e(b) claim alleges that the Defendants fail to use "reasonable procedures" necessary to ensure the "maximum possible accuracy" of the reports they sell. Each of the Plaintiffs allege that Intellicorp violated this provision when it issued inaccurate and incomplete reports about them to their prospective employers. 15 U.S.C. § 1681k(a)(1). Second, Plaintiffs allege that Intellicorp violated 15 U.S.C. §1681k(a)(1), a provision requiring Intellicorp to notify consumers "at the time" it furnishes and sells a consumer report to an employer. Defendants deny these allegations, and maintain that they complied with the FCRA.

The primary remedy sought by the named Plaintiffs on a class basis was a statutory damage award permitted between $100 and $1,000 upon proof of a willful FCRA violation. 15 U.S.C. § 1681n.

## IV. THE LITIGATION AND THE JOINT SETTLEMENT OF THE RESPECTIVE ACTIONS

Following transfer of the *Roe* case to Ohio, the Court reassigned the *Thomas* and *Johnson* cases from the Honorable Dan Aaron Polster to the Honorable James S. Gwin, to whom *Roe*, the first-filed complaint, had been assigned. While the claims of Plaintiffs Mark Johnson and Michael Thomas were consolidated in the amended *Thomas* complaint, the *Roe* and *Thomas/Johnson* cases proceeded on separate litigation tracks and under scheduling orders, with each of those parties conducting their own discovery. While Plaintiffs' cases proceeded on separate litigation tracks, the parties have engaged in joint settlement discussions regarding all cases.

4

Plaintiffs had undertaken significant discovery by the time settlement discussions commenced.  *See* Declaration of Mark A. Chavez ("Chavez Decl."), ¶¶ 29-30.  Plaintiff Roe deposed multiple witnesses designated by Intellicorp pursuant to Fed. R. Civ. P. 30(b)(6), including key fact and technical witnesses and Intellicorp's president, Todd Carpenter.  *Id.*, ¶ 29.  Intellicorp also produced information establishing the size of the class, the policies and procedures in place during the Class Period, and information concerning the architecture of relevant Intellicorp databases.  *Ibid.*  Prior to the parties' initial mediation in April, Plaintiff Jane Roe had fully briefed Plaintiff's Motion for Class Certification (which Defendants opposed).

The parties participated in three days of mediation before Niki Z. Schwartz, Esq., an experienced and well-regarded mediator.  After the first two days of mediation, conducted in New York on April 30 and May 1, 2013, failed to resolve the matters, the parties agreed to a third day of mediation in Chicago, on May 21.  The parties remained far apart after the third day of mediation, but continued to participate in arm's-length negotiations through the auspices of Mr. Schwartz.  Following oral argument on the *Roe* motion for class certification, the parties' settlement negotiations culminated in a confidential memorandum of understanding.  The settling parties apprised the Court that the matter was settled, after which the Court denied the Motion for Class Certification as Moot (Docket No. 119).  The Plaintiffs believe that the claims asserted in each of these actions have merit and that if the cases did not settle they would prevail at trial.  Chavez Decl. ¶ 35.  Intellicorp and IIX, on the other hand, believe that if the cases proceeded to trial, Defendants would prevail.

## V.    THE PROPOSED SETTLEMENT

Following three days of in-person mediation and many subsequent arm's-length negotiations, and in light of the uncertain outcome and the risk of further litigation, including

5

proceedings involving class certification, the parties reached the terms of the proposed

settlement.  Plaintiffs seek to certify a class comprised of:

> All natural persons residing in the United States who were the subject of one or more consumer reports furnished to a third party by Intellicorp or IIX, for employment purposes, which report(s) contained an Intellicorp Criminal SuperSearch result reflecting a record of criminal or traffic arrest or conviction or other criminal history, during the period April 16, 2010, through September 16, 2013.

The Settlement provides substantial monetary and non-monetary relief.  These include

cash disbursements by the Defendants totaling $18.6M, the monetary value of free consumer

reports to all Class Members upon request, which a consumer reporting agency may charge up to

$11.50 to provide.  If only 10% of Class Members obtain their reports, the economic value

would exceed $600,000, not including the economic value of corrected files used by Class

Members to obtain employment.

The Settlement also provides for significant non-monetary benefits to Class Members,

including an expedited dispute process and the legal help of Class Counsel for that process, as

well as corrected procedures for future job applications.  For example, Defendants have agreed to

cease the sale of all unverified database records.  The value of these benefits and services to

Class Members will be demonstrated to the Court in Plaintiff's Motion for Final Approval.

The salient terms of the Settlement are as follows:

- Defendants agree to pay a total of Eighteen Million Six Hundred Thousand Dollars ($18,600,000.00) (the "Settlement Funds), from which Settlement Class Members shall be paid as follows:

  o <u>Automatic Payment Fund</u>:  Automatic Payment of $50.00 to all Settlement Class Members who were the subject of a Criminal SuperSearch that contained a record of criminal or traffic arrest and who were <u>not</u> mailed a copy of the notice pursuant to 15 U.S.C. § 1681k(a)(1), in the period from April 16, 2010 through September 16, 2013.  A Settlement Class Member is not required to take any action to of participate in the Automatic Payment Fund.  The check will include a statement identifying the class action, reference to the Notice and Settlement Agreement and Release on the website,

6

website address and a release.  The settlement checks will expire 60 days after date of issue.

- o <u>Inaccuracy Fund</u>:  The remaining funds (net of attorneys' fees, service awards and costs of notice) shall be set aside as a fund for members of the Settlement Class who elect to make a claim for actual damages related to inaccuracies in the criminal background reports furnished by Defendants.  Payments will be made on a pro rata basis with each Inaccuracy Fund claimant receiving an equal share of the fund, capped at $2,000.

- o <u>Opt Out</u>:  Any member may request to be excluded from the class by providing written notice postmarked by the opt-out deadline.  A member may opt out of the settlement entirely, or elect to remain in the Settlement Class, receive a distribution from the Automatic Payment Fund (if eligible), but  preserve his/her right to pursue an individual damages action by forgoing the right to participate in the Inaccuracy Fund.

- **Reports**

  - o <u>Historical Report</u>:  Upon request of a Settlement Class Member, Defendants agree to provide that class member with a report reflecting the criminal history information that was included in the actual report provided to his or her employer or potential employer during the class period, at no charge to the class member.  A class member must make the request in the 100-day period after the Notice date.  These reports will, among other things, assist class members in determining whether to file an Inaccuracy Claim.

  - o <u>Current Report</u>:  Upon request of a Settlement Class Member, Defendants agree to provide that class member with a report containing the information required by 15 U.S.C. § 1681g(a) existing at the time of the request.  Settlement Class Members must make the request in the 180-day period after the Effective Date in the Settlement Agreement.

- <u>Expedited Inaccuracy Dispute Resolution Process:</u>  Defendants will establish a dedicated toll free phone line with direct contact to Intellicorp representatives authorized to speak to class counsel and assist in correcting inaccuracies in the Current Report.

- <u>Practice Changes:</u>  Intellicorp has agreed to refrain from advertising the Criminal SuperSearch or other similar database product as an "Instant" product.  Additionally, Intellicorp will not make results available from a court records search unless and until a Single County Criminal or other appropriate individualized search is conducted, as more fully detailed in the Settlement Agreement.

- The cost of notice and administration of the settlement shall be paid from the Settlement Funds;

- In the event that settlement checks mailed to Settlement Class Members are not cashed and become stale or void, Defendants shall be entitled to recoup up to $200,000 to defer the cost of Notice and Administration.  The remaining sum shall be distributed to *cy pres* beneficiaries selected by Plaintiffs, subject to the Defendants' consent and Court approval.

- <u>Notice:</u>  No later than 60 days following preliminary approval, the settlement administrator will issue two separate notices: (a) one for class members entitled to a payment from the Automatic Payment Fund and (b) one to all class members explaining the Inaccuracy Fund. Each Notice is to be sent via first class U.S. mail, postage prepaid.  Additionally, the Settlement Administrator shall establish a website with the full text of the Settlement Agreement, the Notices for the two Funds, both in short and long form, the Inaccuracy Fund Claim Form, Inaccuracy Fund Exclusion Form, Preliminary Approval and contact information for Settlement Class Counsel and the Settlement Administrator.

## VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED

Under Federal Rule of Civil Procedure 23, the requirements of class certification are divided into two subsections, Rules 23(a) and 23(b).  For a class to be certified, each of the four requirements of Rule 23(a), as well as the requirements of one of the three subsections of Rule 23(b), must be satisfied.  Federal Rule of Civil Procedure 23(a) requires that in order for a class action to proceed it must be demonstrated that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and, (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23.  This rule authorizes certification if the four prerequisites of Rule 23(a) are met, the Court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Fed R. Civ. P. 23(b)(3); *Eisen v. Carlisle Jacquelin*, 417 U.S. 156 (1974).  The substantive terms of the settlement agreement may factor into certain aspects of the certification calculus.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997); *Sullivan v. DB Investments, Inc.*, 667

8

F.3d 273, 302-304 (3d. Cir. 2011)("The proposed settlement here obviates the difficulties inherent in proving the elements of varied claims at trial or in instructing a jury on varied state laws, and 'the difference is key.'").  As established below, for purposes of the settlement of this action, the requirements of the Federal Rules of Civil Procedure have been met.  *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 851 (6th Cir. 2013)(*citing Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011)).

In determining whether to grant preliminary approval, the Court must determine whether the proposed settlement is fair, adequate, and reasonable.  Fed. R. Civ. P. 23(e)(2); *see also*, *Olden v. Gardner*, 294 Fed.Appx. 210, 217 (6th Cir. 2008).  Rule 23(a)(2) requires that the claims or defenses of the class representatives raise questions of law or fact common to the questions of law or fact raised by the claims or defenses of each member of the settlement class. The test for common questions of law or fact is qualitative, rather than quantitative.  *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1080 (6th Cir.1996).  The court's inquiry focuses not on whether common questions can be raised, but on whether a class action will generate common answers that are likely to drive resolution of the lawsuit.  *Wal-Mart*, *supra*, 131 S. Ct. at 2551.

District courts must conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class.  *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).  While the court must conduct a rigorous analysis as to whether the standards of Rule 23 are met, the elements of typicality, commonality, and adequacy of representation tend to merge.  *Dukes*, 131 S.Ct. at 2551, n.5; *In re Whirlpool*, 722 F.3d at 851.  Furthermore, "[s]ometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim, and sometimes it may be necessary for the court

9

to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160.  At the same time, courts should "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application [that] will in the particular case best serve the ends of justice for affected parties and promote judicial efficiency." *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 740 (4th Cir. 1989), *cert denied sub nom*; *Anderson v. Aetna Cas. & Sur. Co.*, 493 U.S. 959 (1989).  "The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense." *Sterling v Velsicol Chemical Corporation*, 855 F.2d 1188, 1196 (6th Cir. 1988).

### A. *Numerosity*

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed.R.Civ.P. 23.  When class size reaches substantial proportions, the impracticability requirement is usually satisfied by the numbers alone.  *Id*; *see also Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006).  At this time, the Settling Parties estimate that the Settlement Class consists of at least 545,000 persons who were the subject of one or more reports furnished by Intellicorp or IIX for employment purposes in the period between April 16, 2010 and September 16, 2013, and whose report also included a conviction/criminal/traffic record from the Criminal SuperSearch product.  The sheer size of this class is sufficiently large to determine that numerosity has been satisfied and joinder of these Settlement Class Members' claims is not possible.  As such, the first prong of the certification test has been met with regard to the class to be represented under the FCRA.

### B. *Common Questions of Law or Fact*

The representative plaintiff must also show that there are common questions of law or fact.  Fed. R. Civ. P. Rule 23(a)(2).  In order to meet this test, the plaintiff need only show that

there is a *single* question which is common and which advances the litigation. *Sprague v. General Motors Corporation*, 133 F.3d 388, 397 (6th Cir. 1998); *In re American Medical Systems*, 75 F.3d. at 1080.

The commonality test is not a demanding requirement.  Rather, this test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class."  1 Herbert B. Newberg & Alba Conte, NEWBERG ON CLASS ACTIONS, §§ 3.10, at 3-50. This requirement:

> [...] deals with shared questions of law or fact.  Although Rule 23(a)(2) speaks of 'questions' in the plural, we have said that there need only be one question common to the class....  *What we are looking for is a common issue the resolution of which will advance the litigation.*

*Sprague*, *supra*, 133 F.3d at 397 (emphasis added).  *Alkire v. Irving*, 330 F.3d 802, 821 (6th Cir. 2003).

Common questions of law or fact exist where a defendant has allegedly engaged in a course of action that adversely affects a group of individuals and gives rise to a claim for relief. *See*, *e.g.*, *Daffin*, 458 F.3d at 552 (common question of fact as to defect where all class members received same throttle).  Here, Plaintiffs allege common core allegations.  Namely, that Defendants furnished consumer reports about the Settlement Class Members, but failed to contemporaneously notify them that a criminal record was being sent to a prospective employer; and that Defendants followed a set of common procedures in generating and furnishing Criminal SuperSearch reports, which Plaintiffs allege did not include strict procedures to assure that the criminal reports were complete and "maximally accurate," as required by the FCRA.

### C.    *Typical Claims*

The Rule 23(a)(3) typicality requirement tests whether the interests of the class representative fall in line with those of the class members who he seeks to represent.  *Powers v.*

*Hamilton County Public Defender Com'n*, 501 F.3d 592 (6th Cir. 2007)(*citing Sprague*, 133 F.3d at 399).  A plaintiff meets this requirement when his or her claims arise from the same event, practice, or course of conduct as those which give rise to those of the class members.  *In re American Medical Systems*, 75 F.3d at 1082.  Likewise, when the plaintiff's claims rest upon the same legal theory as those of the class members, typicality is also satisfied.  *Id*.  The typicality requirement is met if a claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quotation marks omitted), *quoting In re American Medical Systems*, 75 F.3d at 1082. If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality.  *James v. City of Dallas*, 254 F.3d 551, 571 (5th Cir. 2001); NEWBERG ON CLASS ACTIONS, *supra,* § 3.13 at pp. 3-76ff.  Typicality may be presumed when the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members." *In re American Medical Systems*, 75 F.3d at 1082, *quoting* NEWBERG, *supra*, §§ 3.13, at 3-76.

The scope of Plaintiffs' claims here are coextensive with those of the Settlement Class Members.  In fact, their claims are *identical* to those of the Settlement Class Members. Moreover, the class representatives' interests are squarely aligned with the Settlement Class.  In particular, Plaintiffs' claims arise out of the exact same practices presented in the class allegations of their respective complaints.  None of the class representatives seeks to pursue claims beyond those specifically addressed by the class settlement, and each seeks the same remedy offered by the proposed Settlement.

12

Specifically, the Settlement addresses claims arising out of the alleged failure of the Defendants to provide proper notice to the class members of the contents of their consumer files, and the alleged failure to follow reasonable procedures to assure the maximum possible accuracy of reports issued about them.  These are the precise claims presented by the class representatives in this case, and therefore, Plaintiffs' claims are typical of the common claims held by the class. Rule 23's commonality requirement has therefore been met as to the Settlement Class to be certified.

### D. *Adequate Representation*

Rule 23(a) requires that the class members and their counsel be prepared to provide fair and adequate representation to the class.  To demonstrate adequacy, the Sixth Circuit requires the class representative to meet two tests: 1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.  *Senter*, *supra*, 532 F.2d at 525; *see also*, *In re American Medical Systems*, 75 F.3d at 1083.  Because named class members must act through class counsel, adequacy test turns on the competency of class counsel and the absence of conflicts of interest.  *International Union, United Auto., Aerospace, and Agr. Implement Workers of America v. General*, 497 F.3d 615, 625-626 (6th Cir. 2007).  Class counsel must be qualified, experienced and generally able to conduct the litigation, and to consider whether the class members have interests that are not antagonistic to one another. *Beattie v. CenturyTel, Inc.*, 511 F.3d at 562-563, *citing Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000).

Each of the named Plaintiffs understands and accepts his or her responsibilities as class representative and has no interests which are adverse to the Settlement Class Members. The

complaints reveal no facial conflicts in interest which could compromise the ability of these representatives to effectively represent the class.  Given the identical nature of the claims between the named Plaintiffs and the other Settlement Class Members, there is no potential for conflicting interests in this action.

The proposed Class Counsel are highly experienced attorneys and also meet the adequacy requirements of Rule 23.  As set forth in the declarations filed herewith, Plaintiffs' counsel are experienced in both class action litigation and cases under the Fair Credit Reporting Act.  Lead counsel for the *Roe* team, Chavez & Gertler LLP is a nationally recognized law firm located in Mill Valley, California.  *See* Declaration of Mark Chavez.  Its primary litigation counsel, Mark Chavez, is amongst the most experienced and accomplished class action consumer lawyers in the country.  *Id.*  The attorneys of Consumer Litigation Associates have litigated dozens of class claims under the Fair Credit Reporting Act and participated in a number of nationwide settlements, many of which count among the largest FCRA cases resolved on a class-wide basis. *See* Declaration of Leonard A. Bennett.  Co-counsel are also amongst the nation's best FCRA class action attorneys: The attorneys of O'Toole, McLaughlin, Dooley & Pecora have litigated many FCRA class cases in the Northern District of Ohio and throughout the United States, including *Hall v. Vitran Express, Inc*. and *White v. CRST Expedited, Inc*. *See* Declaration of Matthew A. Dooley; *See* also Declarations of Ian B. Lyngklip, Joshua E. Kim and Devin H. Fok. Local counsel Cohen, Rosenthal & Kramer LLP also prosecute class and collective actions across the United States and in this District. *See* Declaration of Jason Bristol.

Together, these attorneys more than satisfy the requirements of Rule 23, and have sufficient expertise to litigate and manage a class case of this type and scale.  Accordingly, the Plaintiffs meet the adequacy prong of Rule 23.

14

### E.  *Rule 23(b)(3) Factors*

### 1.  <u>Predominance</u>

The remaining factors under Rule 23(b)(3) are likewise satisfied in this case.  Under Rule 23(b)(3) the common issues of law or fact must predominate over individual issues.  *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 535 (6th Cir. 2008).  In other words, the proposed class must be "sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. at 623.  Even where individual issues of damages exist, those issues will not necessarily predominate over common issues where liability can be determined for the entire class.  *Olden v. LaFarge Corp.*, 383 F.3d 495, 507-508 (6th Cir. 2004).

In this case, the "common nucleus of operative facts" that were alleged and that give the Settlement Class Members cohesion include: Defendants allegedly failed to notify the Settlement Class Members contemporaneously of the fact that a consumer report with criminal record information was being sent to a prospective employer; Defendants allegedly failed to maintain strict procedures to assure that the criminal record information was complete, accurate and up-to-date; Defendants allegedly failed to adopt, maintain and follow reasonable procedures to assure maximum possible accuracy of the information concerning the Settlement Class Members about whom the report related; that these alleged acts or omissions violated the FCRA; and that such violations were willful.  Accordingly, the issues that predominate relate exclusively to whether: (1) Defendants' conduct was uniform as to the Settlement Class Members, and (2) the relative culpability of Defendants' conduct.  These class-wide issues will predominate and propel this litigation, and as such, the Settlement Class meets the predominance standard set forth in Rule 23(b)(3).

### 2. <u>**Superiority**</u>

Finally, the Court must determine whether a class action is superior to other methods for the fair and efficient adjudication of the controversy under Fed. R. Civ. P. 23(b)(3). *Daffin*, 458 F.3d at 554. The factors to be considered in determining the superiority of the class mechanism are: (1) the interest in controlling individual prosecutions; (2) the existence of other related litigation; (3) the desirability of concentrating the litigation in the forum; and (4) manageability. *Pfaff v. Whole Foods Mkt. Group, Inc.,* 2010 U.S. Dist. LEXIS 104784 (N.D. Ohio Sept. 29, 2010); *see also Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 220 (D. Md. 1997).

Consumer cases where the anticipated recovery is small lend themselves particularly well to class treatment. Small recoveries do not encourage individuals to bring suit, thus rendering the class mechanism superior. *Beattie*, 511 F.3d at 567 (6th Cir. 2007); *see also Lozada v. Dale Baker Oldsmobile, Inc.*, 197 F.R.D. 321, 332-333 (W.D. Mich. 2000) (class action format permits a large group of claimants to have their claims adjudicated in a single lawsuit where the awesome costs of discovery and trial would deter individual claims).

The FCRA sets the amount of statutory damages available per violation at no less than $100 and no more than $1,000. 15 U.S.C. § 1681n. Thus, the amount in controversy for any individual claimant in this class is small, and when compared to the costs of discovery and litigation, this potential recovery pales in comparison. For this reason alone, it can be said that none of the individual Settlement Class Members possess any controlling interest in the litigation. Likewise, the absence of any competing classes or other individual claims suggests that without class certification, it is unlikely that the Settlement Class Members would obtain any form of relief. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 345 (7th Cir. 1997). In short, unless

the Court certifies this class, it is highly probable that the Settlement Class Members will receive no relief of any kind.

Because the Court is confronted with a request for settlement-only certification, it "need not inquire whether the case, if tried, would present intractable management problems." *Amchem Prods.*, 521 U.S. at 620. The names and current addresses of Settlement Class Members are obtainable from Intellicorp products including its Nationwide People Search product, which will be used to identify Settlement Class Members and update their addresses. Accordingly, settlement is proper so long as the Court finds that the settlement overall is fair, reasonable, and adequate to Class Members. Fed. R. Civ. P. 23(e); *see, e.g.*, *Olden v. Gardner*, 294 Fed.Appx. at 217.

## VII. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

In reviewing a proposed settlement, the Court must determine whether the proposed settlement was the product of legitimate, good faith negotiation, such that notification of the class is justified. *See Bourlas v. Davis Law Assoc.*, 237 F.R.D. 345 (E.D.N.Y. 2006). The preliminary approval process should not constitute a trial of the case on the merits, rather only and determination that the settlement is not the result of overreaching or collusion:

> In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." A preliminary fairness assessment "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." Rather, the Court's duty is to conduct a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation.
>
> * * *

17

> As part of this evaluation, the Court may not second guess the settlement terms. Moreover, when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330 (N.D. Ohio 2001)(citations omitted).

Thus, so long as the class appears to be a resolution of a dispute through a legitimate adversarial process, and the result appears fair and reasonable on its face, the Court should grant preliminary approval and order notice to the class. *See also Romstadt v. Apple Comp., Inc.*, 948 F. Supp. 701 (N.D. Ohio 1996). Preliminary approval is appropriate so long as the proposed settlement falls "within the range of possible judicial approval." 2 Alba Conte & Herbert Newberg, NEWBERG ON CLASS ACTIONS § 11.25; *see also* MANUAL FOR COMPLEX LITIGATION SECOND, §30.44 (2d ed. 1985).

Here, the Court should preliminarily approve the settlement because it is fair, reasonable, and adequate and well within the range likely to receive the final approval of the Court. The settlement was the result of more than a year of thorough litigation, culminating with three days of mediation facilitated by a reputable mediator, together with extended discussions among highly experienced counsel over the course of several months. It is well settled that a "presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." MANUAL FOR COMPLEX LITIGATION, THIRD, § 30.42 (1995).[1] More importantly, the proposed settlement offers substantial monetary and equitable relief to the Class Members. Class

---

[1] *See also*, *e.g.*, *In re Sturm*, 2012 U.S. Dist. LEXIS 116930 (D. Conn. Aug. 20, 2012) ("Here, the settlement was reached by experienced, fully-informed counsel after arm's length negotiations with the assistance of a mediator and therefore the parties are entitled to a presumption that the settlement was fair, reasonable and adequate."); *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, at *4 (S.D.N.Y. 2011) (parties were entitled to a presumption of fairness where mediator facilitated arms length negotiations); *In re AOL Time Warner, Inc. Sec. Litig.*, No. 02 Civ. 5575, 2006 U.S. Dist. LEXIS 17588, at *6 (S.D.N.Y. Apr. 6, 2006) (noting that involvement of mediator in pre-certification settlement negotiations helped "ensure that the proceedings were free of collusion and undue pressure.").

Members whose right to receive contemporaneous notice that a consumer report containing adverse information about them was being furnished to their employer will receive Automatic Payments discounted to one-half of the minimum statutory damages available.  This discount is well within the range of approval given the novelty of the issues, the costs and risks of continued litigation, and the large size of the class, which requires consideration of the Defendants' financial resources and abilities to pay.  Each Settlement Class Member who submits a claim form may also receive up to $2,000 to compensate them for actual damages caused by the inaccuracies in Defendants' reporting – beyond the statutory damages range provided by 15 U.S.C. § 1681n.

Defendants have also agreed to make significant changes to their business model with respect to the provision of "instant" reports such as Criminal SuperSearch, which will increase the completeness and accuracy of their future reporting.  Because there is substantial case law holding that only monetary damages, and no injunctive or other equitable relief, is available under the FCRA (*see*, *e.g.*, *Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) (concluding that the exclusion of equitable remedies from the FCRA was purposeful, and that Congress intended the power to obtain injunctive relief to lie exclusively with the FTC); *Hamilton v. DirecTV, Inc.*, 642 F. Supp. 2d 1304, 1305-06 (M.D. Ala. 2009) (collecting cases on this issue), this important relief might not have been achievable were the case to proceed to trial. Defendants' agreement to provide free historical and current reports to all Class Members who request them adds additional monetary and non-monetary value to the settlement terms.  Chavez Decl. ¶ 34.  The compensation provided to Settlement Class Members is reasonable given the risks, costs, and delay of further litigation, including that the class would not be certified.  *Id.* ¶¶ 35-38.

19

The proposed attorneys' fees and service awards also fall well within the range of acceptable fee awards as established by prevailing case law.  Plaintiffs therefore request that the Court grant preliminary approval of the proposed Settlement and direct Counsel to implement its provisions such that the matter may be scheduled for a final fairness hearing before the Court.

### 3.  <u>Adequacy of Notice</u>

Rule 23 requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal," Fed. R. Civ. P. 23(e)(1), which includes "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  The content and distribution method of the Class Notice proposed here satisfies these statutory and due process requirements.  Intellicorp has agreed to use its sophisticated software to update the last known addresses of each of the Class Members.  Notice will be sent first class mail to each Class Member, and will *also* be emailed to those Class Members whose email address is known to Intellicorp.  Notices returned with a forwarding address will be re-mailed. The notices include a most basic inquiry understandable by the average consumer, and are available in Spanish upon request.  The Settlement Administrator will also maintain a dedicated 800 number for Class Members with further questions can obtain personal assistance.

## VIII.  CONCLUSION

The proposed classes meet the requirements of Rule 23(a) as well as Rule 23(b)(3).  Plaintiffs, with Defendants' consent, respectfully request that the Court certify this action as a class action for Settlement purposes, appoint class counsel and class representatives, and preliminarily approve the proposed settlement of this matter as set forth in the Settlement Agreement and Release together with the manner and form of notice provided for therein.

Respectfully Submitted,

November 12, 2013

LYNGKLIP & ASSOCIATES
CONSUMER LAW CENTER, PLC
Ian B. Lyngklip (P47173)
24500 Northwestern Highway,
Suite 206
Southfield, Michigan 48075
Phone: (248) 208-8864
Ian@michiganconsumerlaw.net

THE LAW OFFICES OF DEVIN H. FOK
Devin H. Fok
P.O. Box 7165
Alhambra, CA 91802-7165
Phone: (310) 430-9933
Fax: (323) 563-3445
devin@devinfoklaw.com

A NEW WAY OF LIFE REENTRY
PROJECT
Joshua E. Kim
958 E. 108th St.
Los Angeles, CA 90059
Phone: (323) 563-3575
Fax: (323) 563-3445
joshua@anewwayoflife.org

COHEN, ROSENTHAL & KRAMER LLP
Jason R. Bristol (0072989)
The Hoyt Block Bldg.
700 St. Clair Avenue, W
Suite 400
Cleveland, OH 44113
Phone: (216) 781-7956
Fax: (216) 781-8061

/s/ Matthew A. Dooley
Matthew A. Dooley
Anthony R. Pecora
O'TOOLE, MCLAUGHLIN, DOOLEY &
PECORA, CO LPA
5455 Detroit Road
Sheffield Village, Ohio 44054
Tel: (440) 930-4001
Fax: (440) 934-7208
mdooley@omdplaw.com
apecora@omdplaw.com

CHAVEZ & GERTLER LLP
Mark A. Chavez
Jonathan E. Gertler
Nance F. Becker
F. Paul Bland
Christian Schreiber
42 Miller Ave.
Mill Valley, CA 94941
Phone: (415) 381-5599
Fax: (415) 381-5572
christian@chavezgertler.com
nance@chavezgertler.com

CONSUMER LITIGATION ASSOCIATES
Leonard A. Bennett (VSB#37523)
Matthew Erausquin
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Phone: (757) 930-3660
Fax: (757) 930-3662
lenbennett@clalegal.com
matt@clalegal.com

*Counsel for Plaintiffs Jane Roe,
Michael R. Thomas, Mark A. Johnson
the Putative Class*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, on this 12th day of November, 2013, electronically filed the

Joint Motion for Preliminary Approval of the Class Settlement, Certification of a Class for the

Purposes of Settlement, and Approval of Form and Manner of Notice using the CM/ECF system,

which automatically sends email notification to the attorneys of record.


/s/ Matthew A. Dooley
Matthew A. Dooley

22